# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KYLE MARCEL PAGE** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-609** |
| | : | |
| **DANIEL DOYLE** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                     **April 24, 2019**

We today analyze two distinct versions of a February 20, 2017 encounter between a police chief and a citizen outside of a hospital. The citizen swears the police chief for unknown reasons grabbed his hand, pulled it back, bent his thumb until it popped, pointed a gun at his head, slammed him against a car, and told the citizen he would "pin" a robbery on him. The police chief swears he did not touch the citizen. The police chief does not explain why he encountered the citizen at the hospital or the surrounding context. He denies ever touching the citizen. He argues the citizen's lack of complaints about injuries, swelling or medical records confirming the injuries proves he did not touch the citizen.

The citizen *pro se* sued the police chief for excessive force violating the Fourth Amendment. Following discovery, the police chief now moves for summary judgment arguing the citizen's alleged injuries are so minimal as to not give rise to a claim, there is no corroborating evidence other than the citizen's testimony compared to the testimony from the police chief and a detective with him at the hospital, and he enjoys qualified immunity. On the present record after discovery, we disagree with the police chief. The citizen, proceeding *pro se* while incarcerated, is entitled to a jury finding as to what happened outside the hospital one evening in February 2017. We deny the police chief's motion for summary judgment.

I.  **Undisputed facts.[1]**

On February 20, 2017, Tullytown Borough Police Chief Daniel Doyle and Detective Eric Landamia encountered Kyle Page outside St. Mary's Hospital in Langhorne, Pennsylvania.[2] Mr. Page testified Chief Doyle grabbed his hand, pulled it back, and bent his thumb "until [he] heard it pop."[3] He testified Chief Doyle pointed his gun at Mr. Page's temple, slammed him against a car, and told Mr. Page he would "pin" a robbery charge on him.[4] Mr. Page described his hand as "black and blue," "swollen," and "numb" after the incident.[5] Mr. Page testified his hand swelled to the size of a golf ball.[6]

Chief Doyle swears he did not grab Mr. Page outside St. Mary's Hospital.[7] He swears to the best of his recollection, he did not touch Mr. Page.[8] He did not see injuries on Mr. Page's hands and did not hear Mr. Page complain of injuries.[9]

Detective Eric Landamia swears he accompanied Chief Doyle to the Hospital on February 20, 2017.[10] He swears Chief Doyle did not handcuff—nor use any force on—Mr. Page during either encounter while Detective Landamia accompanied Officer Doyle.[11] He further swears Mr. Page did not complain of injuries, and Detective Landamia personally did not see injuries.[12]

Later the same day, Detective Tim Carroll took Mr. Page to meet with Chief Doyle and Detective Landamia.[13] Mr. Page testified Chief Doyle apologized to him.[14]

On February 22, 2017, parole agents Bryan Blasczyk and Vincent Sima arrested Mr. Page for a robbery and drove him to Graterford Prison.[15] Agent Blasczyk testified when he arrested Mr. Page, he did not see injuries or swelling, and Mr. Page did not complain of injuries.[16] Agent Blasczyk testified when he handcuffed him, Mr. Page did not complain of injuries or pain in his hand.[17] Agent Sima testified a parole officer would notice a hand injury when handcuffing a suspect.[18] He also testified suspects usually complain of such injuries.[19]

2

When he entered Graterford Prison, Mr. Page told prison officials "police messed me up."[20] He told prison officials Chief Doyle "bent [his] thumb back . . . it's like swollen, I can't really feel it."[21] Mr. Page did not undergo surgery on his thumb.[22] Mr. Page did not seek medical treatment for his thumb before his incarceration.[23]

Mr. Page also completed a screening form when he arrived at Graterford. The form lists medical issues with the question: "Do you now or have you ever had any of the following problems?"[24] The form includes swollen joints, painful joints, fractures, difficulty ambulating, and numbness.[25] The form provides three options: no, yes, and "past 72 hours."[26] Mr. Page marked "no" for these symptoms.[27] A prison medical official cleared Mr. Page for the general prison population.[28]

On March 9, 2017, an unnamed medical professional gave Mr. Page a physical examination.[29] The professional found no abnormalities in Mr. Page's "extremities" and "musculoskeletal" areas.[30]

On May 18, 2018, while incarcerated at Mercer Prison, Mr. Page requested an X-ray examination for "continued pain & swelling since trauma" involving handcuffs in 2017.[31] A physician found a distal tuft in Mr. Page's left third finger with soft swelling, but no fracture or dislocation.[32]

## II. Analysis.[33]

Mr. Page *pro se* sued Chief Doyle for violating his Fourth Amendment rights by using excessive force during their February 20, 2017 encounter outside St. Mary's Hospital. Following discovery, Chief Doyle moves for summary judgment arguing: (1) Mr. Page's excessive force claim fails because he suffered no injury, (2) Mr. Page fails to raise a genuine issue of material fact to survive summary judgment, and (3) qualified immunity bars Mr. Page's claim.

3

Mr. Page *pro se* argues he suffered more than de minimis injury because a doctor diagnosed him with Post Traumatic Stress Disorder.[34] He does not adduce evidence of the diagnosis but promises to adduce evidence at trial.[35]

Mr. Page may not defeat summary judgment with a promise to adduce evidence at trial. But even without Mr. Page's promised evidence, the record presently does not support summary judgment for Chief Doyle. We deny Chief Doyle's motion for summary judgment for the reasons below.

### A. Mr. Page need not show more than de minimis injury to establish his excessive force claim.

Chief Doyle argues we must grant summary judgment because Mr. Page shows no, or at most de minimis, injury. We disagree with Chief Doyle.

Mr. Page sues Chief Doyle for excessive force under the Fourth Amendment. The Fourth Amendment guarantees Mr. Page's right to be free from excessive force during an arrest, investigatory stop, or other type of "seizure."[36] To establish an excessive force claim under the Fourth Amendment, Mr. Page must prove "both that a seizure occurred and that it was unreasonable."[37] Mr. Page must show more than de minimis force to establish his claim.[38] But as our Court of Appeals explained, "de minimis injuries do not necessarily establish de minimis force."[39]

We may grant Chief Doyle summary judgment if, after resolving factual disputes in favor of Mr. Page, Chief Doyle's "use of force was objectively reasonable under the circumstances."[40] To determine objective reasonableness, we look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[41] Other factors for determining objective reasonableness include the duration of the defendant's action, whether the action occurred during

4

an arrest, the possibility the suspect possessed a weapon, and the number of people with whom the defendant must contend at one time.[42]

Chief Doyle cites *Bensinger v. Mullen* to support his argument Mr. Page cannot establish an excessive force claim when he suffered only de minimis injury.[43] In *Bensinger*, the defendant police officers forcefully arrested plaintiff for assault after he drunkenly and violently argued with his girlfriend.[44] The plaintiff claimed the officers used excessive force during the arrest but he did not seek medical treatment. The court granted summary judgment to the officers. The court found the officers' use of force objectively reasonable under the circumstances: (1) the officers responded to reports the plaintiff drunkenly assaulted his girlfriend, (2) the officer saw the plaintiff wielding a knife and arguing with his girlfriend when they arrived, (3) the plaintiff never sought medical treatment for his alleged injuries.[45]

But the court in *Bensinger* did not, as Chief Doyle suggests, grant summary judgment to the officers merely because the plaintiff suffered de minimis injuries. The court looked at all the circumstances in determining the officers acted reasonably, including the "seriousness of the crime he was involved in, his intoxicated condition, and the obvious probable cause police had to arrest him."[46] The court explained the lack of injuries "add[ed] credence" to its determination of reasonableness.[47] The decision in *Bensinger* does not stand for the proposition we may grant summary judgment merely because the plaintiff suffered de minimis injury.

Instead of focusing only on the extent of Mr. Page's injuries, we look to our Court of Appeals' factors in determining objective reasonableness. Chief Doyle presents no context for the February 20, 2017 encounter outside St. Mary's Hospital. From our reading of the record in the light most favorable to Mr. Page, Mr. Page stood outside the Hospital, Chief Doyle grabbed his hand, pulled it back until Mr. Page heard his thumb pop, slammed him against a car, and pointed

5

a gun at his head.[48] Chief Doyle presents no facts showing whether Mr. Page posed a threat to him, whether Mr. Page resisted arrest, or whether Chief Doyle had articulable suspicion to seize Mr. Page. He presents no evidence concerning the duration of the encounter, the possibility Mr. Page possessed a weapon, or the number of people with whom Chief Doyle had to contend. From our reading of the record and viewing the facts in the light most favorable to Mr. Page, a reasonable jury could find Chief Doyle used unreasonable force under these circumstances. Mr. Page's lack of injuries does not negate his claim.

We cannot grant Chief Doyle summary judgment based on the record before us.

**B.   We find a genuine issue of material fact as to whether Chief Doyle used excessive force during the February 20, 2017 encounter.**

Chief Doyle argues Mr. Page fails to raise a genuine issue of fact because he merely relies on his own self-serving deposition testimony, and other evidence in the record contradicts his testimony. Chief Doyle cites *Abuomar v. Pennsylvania Department of Corrections*.[49] In *Abuomar*, the plaintiff worked as an imam at a prison. On March 5, 2014, two prison correctional officers escorted the plaintiff to the superintendent's office to discuss complaints about the plaintiff's work environment. The plaintiff claimed the officer violated his Fourth Amendment rights when they escorted him to the superintendent's office. The plaintiff relied solely on his account of the events to support his claim the officers grabbed him.

The court granted summary judgment finding the plaintiff failed to adduce evidence to create a *genuine* issue of fact. As the plaintiff relied only on his account of the events, the court explained his "self-serving statements are unsupported by the evidence and comprise the only account of events that mentions physical[] contact of any kind on that day."[50] The court then explained it need not "accept unsupported, self-serving testimony as evidence sufficient to create a jury question."[51]

6

The court looked at evidence contradicting the plaintiff's account, including a colleague's statement the officers did not grab the plaintiff. The court also found the plaintiff conceded he could leave at any time. The court explained the plaintiff's admission he could freely terminate the encounter "most clearly" negated a finding the officers violated the plaintiff's Fourth Amendment rights.[52] The court also found, accepting the plaintiff's account of the event, the officers' actions did not violate the Fourth Amendment.[53]

Unlike *Abuomar*, Mr. Page's testimony does not reveal the lack of a claim. Mr. Page testified Chief Doyle pulled his hand back on February 20, 2017 and then bent his thumb until he heard a "pop," slammed him on a car, and pointed a gun at his head.[54] Mr. Page may rely on his own deposition testimony to defeat summary judgment.[55] As explained, Chief Doyle fails to present surrounding circumstances sufficient to determine objective reasonableness but on the record before us, a jury could find Chief Doyle acted unreasonably during the February 20, 2017 encounter.

Chief Doyle argues for summary judgment because his and Detective Landamia's affidavits contradict Mr. Page's account of the February 20, 2017 incident. But this evidence creates a dispute of material fact precluding summary judgment. A reasonable jury could credit Mr. Page's account or Chief Doyle's and Detective Landamia's account. We cannot resolve this dispute at summary judgment.

Chief Doyle also argues evidence showing Mr. Page suffered no injuries from the February 20, 2017 encounter proves no reasonable juror could find in Mr. Page's favor. But Mr. Page need not show injury to prove excessive force. The relevant question is whether Chief Doyle used more than de minimis *force*, and we look at several factors to determine whether Chief Doyle acted reasonably under the circumstances. Evidence of Mr. Page's lack of injury does not contradict Mr.

7

Page's deposition testimony recounting Chief Doyle's use of force outside St. Mary's Hospital, nor does this evidence necessarily negate Mr. Page's excessive force claim. A jury could conclude based on the affidavits and the lack of evidence showing injuries, Chief Doyle acted reasonably. But we cannot resolve this issue as a matter of law.

Mr. Page's deposition testimony raises a genuine issue of material fact precluding summary judgment on his excessive force claim.

### C. Chief Doyle fails to show qualified immunity bars Mr. Page's excessive force claim.

Chief Doyle argues qualified immunity bars Mr. Page's excessive force claim. Qualified immunity bars Mr. Page's claim unless he shows Chief Doyle (1) violated Mr. Page's constitutional or statutory right and (2) the right was "clearly established" at the time of Chief Doyle's challenged conduct.[56] In determining whether Mr. Page's right to be free from excessive force was "clearly established," we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[57] Our Court of Appeals instructs we use the objective reasonableness factors to determine whether a reasonable officer would know his conduct violated the law.[58] "[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."[59]

In *Jackson v. City of Pittsburgh*, the plaintiff sued police officers alleging excessive force when they arrested him during a vehicle stop.[60] The officers moved for summary judgment arguing qualified immunity barred the plaintiff's claim. The court explained viewing the record in the light most favorable to the plaintiff, a jury could find the officers violated the plaintiff's Fourth Amendment rights. In determining whether the right was "clearly established," the court explained the plaintiff's and officers' accounts of the events differed. If the jury accepted the plaintiff's version, the court explained the jury could find a reasonable officer used excessive force because

8

the plaintiff "was unarmed and not exerting any threats towards the officers."[61] Considering the lack of a threat from the plaintiff, a reasonable officer would know the use of force violated the law.[62] The court denied summary judgment for the officers.

Chief Doyle fails to sufficiently provide context to determine whether he acted reasonably during the February 20, 2017 encounter outside St. Mary's Hospital. Based on the present record, we cannot determine whether Chief Doyle acted reasonably in bending Mr. Page's thumb until he heard it pop, slamming him against a car, and pointing a gun at his head. We have no facts concerning whether Mr. Page posed a threat to Chief Doyle, or whether Mr. Page attempted to flee or evade Chief Doyle. We do not have facts concerning whether Chief Doyle had a level of suspicion to seize Mr. Page. We cannot determine whether Chief Doyle violated Mr. Page's clearly established right to be free of excessive force because we lack context to determine whether he acted reasonably under the circumstances. At this point, we have Mr. Page's account of the February 20, 2017 encounter and Chief Doyle's and Detective Landamia's contradictory account. Accepting Mr. Page's version of the accounts, a reasonable officer would know he violated the law when he grabbed a person, slammed him against a car, and pointed a gun at his head, and the person posed no threat and did not attempt to flee, and the officer had no suspicion to seize the person.[63]

We cannot grant summary judgment for Chief Doyle with the factual disputes in the record. We deny Chief Doyle's motion for summary judgment on qualified immunity.

## III. Conclusion.

In an accompanying Order, we deny Chief Doyle's motion for summary judgment on Mr. Page's excessive force claim. These issues must be resolved by the fact-finder.

[1] Our Policies and Procedures require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. Chief Doyle filed his motion and brief in support of summary judgment at ECF Doc. No. 64. He filed his SUMF at ECF Doc. No. 65 and his appendix at ECF Doc. No. 66. Mr. Page filed his response to Chief Doyle's motion at ECF Doc. No. 70. We refer to exhibits in the appendix by the Bates number (e.g. App. 1a).

[2] ECF Doc. No. 66 (Doyle App.) at 1a-2a.

[3] *Id.* at 2a.

[4] *Id.*

[5] *Id.* at 7a.

[6] *Id.*

[7] *Id.* at 60a.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 61a. Mr. Page originally sued Detective Landamia. We dismissed his claims against Detective Landamia on June 20, 2018. ECF Doc. No. 30.

[11] ECF Doc. No. 66 (Doyle App.) at 61a.

[12] *Id.*

[13] *Id.* at 3a.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 64a.

[17] *Id.*

[18] *Id.* at 67a.

[19] *Id.*

[20] *Id.* at 3a.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 4a.

[24] *Id.* at 70a.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 73a.

[29] *Id.* at 74a.

[30] *Id.*

[31] *Id.* at 75a.

[32] *Id.* at 76a.

[33] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson,* 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris,* 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg,* 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis,* 808 F.3d at 643 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis,* 808 F.3d at 643 (citing *Celotex Corp.,* 477 U.S. at 322-323).

[34] ECF Doc. No. 70, at p. 1.

[35] ECF Doc. No. 70, at p. 1. At Mr. Page's request, we placed this case on our Court's Panel for attorneys to volunteer to represent Mr. Page in this excessive force civil rights case. ECF Doc. No.

11

45. After almost two months of no attorney expressing an interest in representing Mr. Page, we withdrew the case from the Panel and scheduled this matter for trial. ECF Doc. No. 48. Mr. Page continues to proceed *pro se*. We today place the case on the Panel for final review by possible volunteer attorneys as the case now proceeds to trial in late May 2019.

[36] U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 388 (1989).

[37] *Lynn v. Schertzberg*, 169 F. App'x 666, 669 (3d Cir. 2006).

[38] *Watson v. Haverford Twp. Police Dep't*, No. 10-6731, 2012 WL 1900629, at *13 (E.D. Pa. May 25, 2012).

[39] *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002); *see also Mounshar v. City of Philadelphia*, No. 15-4168, 2016 WL 3997057, at *5 (E.D. Pa. July 26, 2016) ("While a jury may ultimately consider the absence of injury in evaluating the reasonableness of the force, the mere absence of a tangible injury does not warrant summary judgment on [the Fourth Amendment excessive force] claim."); *Snowden v. City of Philadelphia*, No. 11-5041, 2012 WL 4717897, at *6 (E.D. Pa. Oct. 4, 2012) ("[T]he minor degree of a plaintiff's injury, while relevant to the totality of the circumstances, cannot on its own act as a complete defense to an excessive force claim.").

[40] *Retzler v. McAndrew*, No. 08-2764, 2010 WL 3791706, at *3 (E.D. Pa. Sept. 29, 2010) (quoting *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004)) (granting defendant summary judgment on excessive force claim when (1) defendant grabbed plaintiff's arm, (2) the encounter lasted "for only a brief period of time" and, plaintiff did not suffer injury).

[41] *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 396).

[42] *Spencer v. Biggins*, No. 11-01850, 2013 WL 5702312, at *6 (M.D. Pa. Oct. 18, 2013) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

[43] *Bensinger v. Mullen*, No. 99-1771, 2000 WL 1100781 (E.D. Pa. Aug. 4, 2000).

[44] *Id.* at *1.

[45] *Id.* at *2.

[46] *Id.*

[47] *Id.*

[48] ECF Doc. No. 66 (Doyle App.) at 2a.

[49] *Abuomar v. Commonwealth of Pennsylvania Dep't of Corr.*, No. 14-01036, 2017 WL 2972825, at *5 (M.D. Pa. July 12, 2017), *aff'd sub nom. Abuomar v. Dep't of Corr.*, 754 F. App'x 102 (3d Cir. 2018).

⁵⁰ *Id.*

⁵¹ *Id.*

⁵² *Id.*

⁵³ *Id.* at *6.

⁵⁴ ECF Doc. No. 66 (Doyle App.) at 2a.

⁵⁵ *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (explaining Plaintiff can defeat summary judgment relying solely on his own deposition testimony if "Plaintiff's [deposition] testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature").

⁵⁶ *See Aschroft v. al-Kidd*, 563 U.S. 731, 731 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

⁵⁷ *Geist v. Ammary*, 40 F. Supp. 3d 467, 484 (E.D. Pa. 2014).

⁵⁸ *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005).

⁵⁹ *Geist*, 40 F. Supp. 3d at 483 (quoting *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002)).

⁶⁰ *Jackson v. City of Pittsburgh*, 688 F. Supp. 2d 379, 387 (W.D. Pa. 2010).

⁶¹ *Id.* at 400-01.

⁶² *Id.*

⁶³ *See Sussino v. New Jersey Division of State Police*, No. 09-6278, 2012 WL 5184582, at *8 (D.N.J. Oct. 18, 2012) (denying qualified immunity at summary judgment stage when bent plaintiff's thumb back until it touched his forearm); *Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016) (citing *Kopec*, 361 F.3d at 778) ("Citizens have a clearly established right to be free from excessive force while restrained."); *Mounshar*, 2016 WL 3997057, at *6 (denying qualified immunity at summary judgment stage when plaintiff claimed the officer roughly handcuffed him without evidence showing plaintiff "posed any threat, failed to comply with instructions, resisted arrest, committed a serious crime, appeared to be armed or attempted to flee").